UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE A. SIMS,

        Petitioner,

v.                                                   CASE NO. 04-CV-73998-DT
                                                     HONORABLE VICTORIA A. ROBERTS

MARY K. BERGHUIS,

        Respondent.
_____/

## ORDER DISMISSING PETITIONER'S FIRST CLAIM
## AND GRANTING AN EVIDENTIARY HEARING
## ON THE SECOND AND THIRD CLAIMS

Petitioner Clarence A. Sims has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254, and Respondent has filed an answer to the habeas petition. Having reviewed the pleadings and state court record, the Court has determined that Petitioner is not entitled to habeas relief on his first claim and that an evidentiary hearing is necessary on the second and third claims.

### I.  Background

Petitioner was charged in Saginaw County, Michigan with assault with intent to commit great bodily harm less than murder and criminal sexual conduct in the first degree. As explained by the state court, the charges arose from

> an incident that occurred on the evening July 4, 1997 continuing through the early morning hours of July 5, 1997. Defendant and [the complainant] went out that night. Defendant rented a room at the Knights Inn in Buena Vista Township. Once in the motel room, both defendant and [the complainant] drank alcohol, and defendant repeatedly invited [the complainant] to join him in the hot tub. She refused. After some time, as [the complainant] tried to leave the room, defendant put his belt around her neck and tightened it. Defendant pulled her to the hot tub and began putting her head under water until she blacked out. Later, after [the complainant] regained consciousness, defendant ordered [the complainant] to take her clothes off and then penetrated her in the hot tub. He then pulled her toward the bed.

> Based on a guest's complaint, a motel desk clerk called 911 to request a police officer go to defendant's room. When the police arrived at the motel, defendant answered the door and was not wearing any clothes. [The complainant] came running at the police wearing only panties. [The complainant] was crying hysterically, appeared very frightened, and stated that defendant tried to kill her and had raped her. The police observed that [the complainant's] eyes were swollen and protruding, and she had a red mark around her neck. Defendant was arrested . . . .

*People v. Sims*, No. 235999 (Mich. Ct. App. Feb. 11, 2003).

On September 15, 2000, a circuit court jury found Petitioner guilty of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, and criminal sexual conduct in the second degree, MICH. COMP. LAWS §750.520c(1)(f). The trial court sentenced Petitioner to concurrent prison terms of three and a half to ten years for the assault conviction and three and a half to fifteen years for the criminal sexual conduct conviction.

Petitioner moved for a new trial on the grounds that (1) the prosecutor did not provide an adequate explanation for peremptorily excusing African Americans from the jury, (2) prospective jurors stated that they knew Petitioner in their professional capacities, and (3) the foreman of the jury, who was a teacher, discussed the case with his class while the case was still being tried. The trial court rejected the first and second of these claims without explanation, but presumably because it had ruled on the issues during trial. The trial court held an evidentiary hearing on the third claim and then denied Petitioner's motion for new trial.

Petitioner raised his habeas claims in an appeal of right. The Michigan Court of Appeals affirmed his convictions, *see id.*, and on July 28, 2003, the Michigan Supreme Court denied leave to appeal. *See People v. Sims*, 469 Mich. 863; 666 N.W.2d 674 (2003) (table).

Petitioner filed his habeas corpus petition on October 13, 2004. He alleges that (1) he

was deprived of an impartial jury because three prospective jurors stated that they knew him through their employment, (2) the prosecutor improperly excluded all but one African American from the jury, and (3) the trial court violated his right to due process by admitting in evidence Petitioner's videotaped confession to the police. Respondent urges the Court to deny the habeas petition on the ground that the state court's adjudication of Petitioner's claims was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as

neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III. Discussion

### A. Biased Jury Claim

Petitioner alleges that he was deprived of an impartial jury because a police officer, a deputy sheriff, and a corporate security investigator stated during *voir dire* that they knew him through their employment. Petitioner claims that the prospective jurors' comments tainted the jury's perception of him because the comments made him appear to be a criminal before the trial commenced.

#### 1. Legal Framework

"The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury." *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (citing *Morgan v. Illinois*, 504 U.S. 719 (1992)).

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips*, 455 U.S. 209, 217 (1982).

### 2. The Facts

Richard Mallette stated during *voir dire* that he knew Petitioner from his employment as a police officer. Matthew Murphy stated that he worked for the sheriff's department and knew Petitioner in his capacity as a guard. Luther Harrell explained that he thought he knew Petitioner from his work as a former investigator for General Motors Corporation. He claimed that "some information" came across his desk. Although Mallette, Murphy, and Harrell did not sit on Petitioner's jury, Petitioner maintains that their comments tainted the jury by making it appear as though he had been held in jail, previously convicted, or criminally investigated.

### 3. The State Court Decisions

Defense counsel moved for a mistrial on the basis of the comments made by Mallette, Murphy, and Harrell. The trial court stated in response that it was not remarkable that a person accused of a crime would be arrested and that defense counsel was reading too much into the prospective jurors' comments. The trial court opined that a prospective juror's prior contact with Petitioner through an investigation revealed nothing.

> The Michigan Court of Appeals pointed out during its review of Petitioner's claim that
>
> none of the exchanges with the prospective jurors elicited information, directly or indirectly, that [Petitioner] was a criminal and, therefore, would affect the jury's impartiality. Importantly, none of the prospective jurors expressed any opinion regarding [Petitioner's] guilt. Merely stating that they knew [Petitioner] did not imply that it was through possible criminal activity committed by [Petitioner.] Moreover, the fleeting comments made during voir dire were vague, and there is no indication that these comments influenced or biased the jury.

*Sims*, Mich. Ct. App. No. 235999, at 2 (internal citation omitted). The court of appeals concluded that the prospective jurors' comments did not affect the impartiality of the jury.

### 4. Analysis

Petitioner's allegations of jury bias must be viewed with skepticism because "the challenged influence occurred before the jurors took their oath to be impartial." *Scott v. Mitchell*, 209 F.3d 854, 879 (6th Cir. 2000). "General statements about crime, the criminal justice system, and . . . the crimes charged are of no constitutional concern." *United States v. Guzman*, 450 F.3d 627, 630 (6th Cir. 2006). "Even disclosure of the *defendant's* prior criminal prosecutions does not require a mistrial." *Id.* at 631 (emphasis in original).

Furthermore, the trial court instructed the jurors that Petitioner was presumed innocent throughout trial and was entitled to a verdict of not guilty unless they were satisfied that the prosecutor proved every element of the crimes beyond a reasonable doubt. The trial court also explained what evidence was and charged the jurors to consider only the evidence that was properly admitted. The trial court instructed the jurors not to let sympathy or prejudice influence their decision.

Jurors are presumed to be impartial, *Guzman*, 450 F.3d at 629 (citing *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)), and to follow the trial court's instructions, *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Furthermore, the *voir dire* proceedings indicate that Petitioner's jury was willing and able to decide the case solely on the evidence before it and without any preconceived notions about Petitioner or the charges against him.

This Court agrees with the state court that the vague and fleeting remarks made by Mallette, Murphy, and Harrell did not deprive Petitioner of due process and a fair trial. The state court's conclusion that Petitioner was not prejudiced by the prospective jurors' comments did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court

6

precedent. Therefore, Petitioner's first claim has no merit and must be dismissed.

## B.  The Prosecutor's Peremptory Challenges

Petitioner, who is an African American, alleges that there were seven African American prospective jurors and that the prosecutor improperly used peremptory challenges to exclude six of the African Americans from the jury. Petitioner contends that the prosecutor gave no reason for striking one African American and he provided superficial reasons for striking five other African Americans from the jury.

Petitioner raised this claim during trial and in his motion for a new trial. The trial court rejected his claims, and the Michigan Court of Appeals concluded that the trial court properly determined that the prosecutor provided race-neutral explanations for using peremptory challenges to excuse African American venire persons.

### 1. Legal Framework

"[T]he Constitution's guarantee of equal protection ensures that a party may not exercise a peremptory challenge to remove an individual on account of that person's race." *McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 521 (6th Cir. 2001) (citing *Batson v. Kentucky*, 476 U.S. 79 (1986) and *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 630-31(1991)). Courts must engage in "a three-step process [when] evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause." *Hernandez v. New York*, 500 U.S. 352, 358 (1991). "First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race." *Id*.

To establish a prima facie case of purposeful discrimination in the selection of a petit jury,

> the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury . . . raises the necessary inference of purposeful discrimination.

*Batson*, 476 U.S. at 96 (internal citations omitted).

If the defendant succeeds in making a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race, "the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question." *Hernandez*, 500 U.S. at 358-59. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation." *Id*. at 360. The prosecutor does not have to provide a persuasive or plausible explanation. *Purkettt v. Elem*, 514 U.S. 765, 768 (1995).

The third step of the inquiry requires the challenging party to "demonstrate that the purported explanation is merely a pretext for a racial motivation." *McCurdy,* 240 F.3d at 521. Then "the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359. A *Batson* error is a structural error, which is not subject to harmless error analysis. *United States v. McFerron*, 163 F.3d 952, 955 (6th Cir. 1998). However, appellate courts must grant trial courts "considerable leeway in applying *Batson*," and "considerations of federalism require federal habeas courts to show yet further deference to state-court judgments." *Rice v. Collins*, __ U.S. __, __, 126 S. Ct. 969, 977 (Breyer, J., concurring).

### 2. The Facts

### a.  Step 1 - The Prima Facie Case

Petitioner established a prima facie case when he moved for a mistrial.  He is an African American (and, therefore, a member of a cognizable racial group) and he demonstrated that the prosecutor exercised peremptory challenges to remove six potential African American jurors.  This showing is sufficient to raise a rebuttable inference that the prosecutor excluded the African American jurors because of their race.  *Batson*, 476 U.S. at 96; *Greer v Mitchell,* 264 F.3d 663, 682 (6th Cir. 2001).

The fact that the prosecutor left one African American on the jury did not immunize him from the inference that he used peremptory challenges to purposefully discriminate against Petitioner.  *See Batson,* 476 U.S. at 95 ("'A single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.'") (*quoting Village of Arlington Heights v Metropolitan Housing Development Corp.,* 429 U.S. 252, 264 n.14 (1977)); *Greer,* 264 F.3d at 682 n.4 (*Batson* challenge based on the prosecutor's use of peremptory challenges to remove three African Americans was allowed even though two African American jurors were left on the jury).

### b.  Step 2 - The Prosecutor's Explanations

The prosecutor stated that he excused one African American because he was the uncle of a defense attorney and because he initially stated that an assault did not constitute criminal sexual conduct if the alleged victim did not resist the assault.  The prosecutor excused a second African American on the basis of a misdemeanor conviction.  A third African American was excused because she worked with young people as a social worker.  The prosecutor thought that a social worker might be inclined to believe young people such as Petitioner.  The prosecutor

struck two additional African American prospective jurors because he anticipated that a correctional officer would be seated as a juror if the two prospective jurors were excused.

### c. Step 3 - Purposeful Discrimination

Immediately after the prosecutor provided his reasons for excusing African Americans from the venire, the trial court denied Petitioner's motion for a mistrial. This Court is troubled by the fact that the trial court omitted the third *Batson* step. The trial court denied Petitioner's motion for a mistrial without eliciting defense counsel's response to the prosecutor's explanations. The trial court also interrupted defense counsel when counsel attempted to make a record of the number of African Americans excused by the prosecutor. The trial court failed to review the circumstances or to determine whether Petitioner had carried his burden of showing purposeful discrimination. Although the trial court implicitly made that determination when it denied Petitioner's motion for a mistrial, the court made no findings of fact or credibility determinations.

This Court is further troubled by the fact that, although the prosecutor offered explanations that were race-neutral on their face, he excused two African Americans, rather than whites, in anticipation of seating a correctional officer. And, if the prosecutor excused a sixth African American, as defense counsel suggested at trial, the trial judge did not even solicit an explanation for that peremptory strike by the prosecutor.

Since the record before the Court does not reveal the race of all the venire persons eliminated by the prosecutor through peremptory challenges, nor the race of the jurors who decided Petitioner's case, an evidentiary hearing is required. The trial court failed to afford Petitioner a full and fair hearing on a claim which, if proved, would be a basis for granting the

10

writ of habeas corpus. Consequently, the Court defers making a decision on Petitioner's *Batson* claim. The Court will appoint counsel and will grant an evidentiary hearing on the claim.

### C. Voluntariness of the Confession

The third and final habeas claim alleges that the trial court violated Petitioner's right to due process by admitting in evidence Petitioner's videotaped statement to the police.[1] Petitioner alleges that his confession was involuntary because he had been awake all night, had been drinking much of the night and had not eaten, was inexperienced, was in custody, and was not permitted to call home even though he informed the police that his aunt was an attorney and was residing in his household. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that Petitioner's confession was voluntary because he had not been compelled to provide a statement implicating himself in the assault.

#### 1. Legal Framework

"[A] confession cannot be used if it is involuntary." *United States v. Macklin*, 900 F.2d 948, 951 (6th Cir. 1990) (citing *United States v. Washington*, 431 U.S. 181, 186-87 (1977) and *Michigan v. Tucker*, 417 U.S. 433, 440-41 (1974)). To safeguard the privilege against self-incrimination, a suspect "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him

---

[1] Petitioner's statement included the admission that he was present with the complainant on the night in question. He initially denied using a belt on the complainant, but he later stated that he used a belt in self-defense. During most of the interview Petitioner denied sexually penetrating the complainant, but by the end of his statement he said, "Maybe I did; maybe I didn't."

prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). If a suspect subject to custodial interrogation "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Id*. at 444-45.

"Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process . . . ." *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Courts must look to the totality of the circumstances when determining whether a confession has been elicited by unconstitutional means. *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).

> Factors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep.

*Id*. (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973)).

### 2. The Facts and the Need for an Evidentiary Hearing

The Court believes that an evidentiary hearing is necessary on Petitioner's third claim, because some facts are unclear from the record. The Court has been able to ascertain that Petitioner was arrested about 6:30 a.m. on Saturday, July 5, 1997. At 10:30 a.m. that same morning, Detective Michael Hosh interviewed Petitioner at the public safety office of Buena

Vista Township. Officer Baker also was present.

Detective Hosh testified at a hearing on the voluntariness of Petitioner's confession, that he advised Petitioner of his *Miranda* rights, and that Petitioner waived his rights after indicating that he understood them. According to Detective Hosh, no tricks, force, coercion, or deceit were used to make Petitioner waive his rights, and he did not appear to lack food or sleep or to be under the influence of medication or controlled substances. Hosh testified that Petitioner appeared alert and was cognizant of what Hosh was saying.

Detective Hosh interviewed Petitioner a second time after a break of about three hours, during which Petitioner remained in a holding cell. Detective Hosh reiterated Petitioner's constitutional rights at approximately 3:00 p.m., and Petitioner waived his rights after indicating that he understood them and wanted to speak with the officers.

What is unclear to the Court is the sequence of events involving Petitioner's admissions to the police and his requests to make a telephone call to relatives. Detective Hosh testified at the evidentiary hearing that Petitioner wanted to call relatives to determine how they were doing, but Petitioner did not say that he needed to call someone to obtain advice of rights or advice of counsel. Hosh maintained at the evidentiary hearing that he was not informed that someone claiming to be an attorney was trying to contact Petitioner.

The trial court reviewed a videotape of the interviews and confirmed at the evidentiary hearing that Petitioner had asked to speak with relatives who were in town and that Detective Hosh had said he could talk to his relatives. The trial court found no mention in the videotape that one of Petitioner's relatives was an attorney.

Petitioner, however, testified at the evidentiary hearing that a plain clothes officer by the name of Pellerito was present when Officer Baker ushered Petitioner out of his cell. Petitioner thought that Pellerito was Officer Baker's supervisor. Petitioner further testified that, as soon as he was allowed outside his cell, he informed Officer Baker that he wanted to make a telephone call. The officers said, "No, we'll get to that," or "No, we don't need your people here." Petitioner explained that his aunt was an attorney and was at home, but, according to Petitioner, Baker or Pellerito did not believe him. The timing of this conversation is unclear from the record.

Furthermore, attorney Eva Culberson Matthews has signed an affidavit indicating that she is a licensed attorney and that she represented Petitioner during his arraignment. Her affidavit also states:

> 3. Law enforcement officials, Scott Pellerito, Director of Public Safety, Buena Vista Township and Detective Michael Hosh (State) refused to permit Mr. Sims to consult with me prior to subjecting him to interrogation.
>
> 4. The aforementioned law enforcement officials informed me that they did not believe that I was a lawyer.
>
> 5. I was within a 10-mile radius of the interrogation site and would have produced my credentials to their satisfaction had either of them called me, or permitted my client to call me.

Doc. #28, September 19, 2005, at 3.

Petitioner testified at the evidentiary hearing that he was not permitted to talk with his aunt until 7:00 p.m. on the following day, while he housed at the jail. Because of the seriousness of Petitioner's claim and the lack of clarity in the record, an evidentiary hearing is necessary on

14

Petitioner's third claim.

### IV. Conclusion

The state court's decision on Petitioner's first claim (biased jury due to comments made by prospective jurors) was objectively reasonable. Therefore, Petitioner is not entitled to habeas relief on his first claim. That claim is DISMISSED.

An evidentiary hearing is necessary on the second and third claims regarding the prosecutor's peremptory challenges and Petitioner's statements to the police. Accordingly, a separate order will issue appointing counsel and scheduling an evidentiary hearing on claims two and three.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: December 6, 2006

The undersigned certifies that a copy of this document was served on the attorneys of record and pro se petitioner by electronic means or U.S. Mail on December 6, 2006.

S/Carol A. Pinegar
Deputy Clerk